**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Jason A. Czekalski

   v.        Civil No. 17-cv-557-JL

William Wrenn, New Hampshire Department
of Corrections Commissioner; Christopher
Kench; Paula Mattis; and Jon Fouts

**REPORT AND RECOMMENDATION**

  Before the court is the (first) amended complaint (Doc. No. 5), filed by Jason A. Czekalski, an inmate at the New Hampshire State Prison ("NHSP"), naming as defendants (former) New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn; DOC Director of Security Christopher Kench; DOC Director of Forensic Services Paula Mattis; and NHSP Director of Security Jon Fouts.  This court's January 19, 2018 Order (Doc. No. 2) identified the claims asserted in the original complaint (Doc. No. 1), subjected those claims to preliminary review under 28 U.S.C. § 1915A and LR 4.3(d)(1), and granted plaintiff leave to file an amended complaint.  Document No. 5, filed in response to that Order, is deemed to be the operative complaint in this action, and is subjected to further preliminary review under 28 U.S.C. § 1915A and LR 4.3(d)(1) herein.

  Also before the court are Czekalski's motion to certify the case as a class action and to appoint class counsel (Doc. No. 3)

and his motion for a preliminary injunction (Doc. No. 4). Those motions are addressed in this Report and Recommendation ("R&R").

## Background

### I.   Allegations in Amended Complaint

Czekalski has been incarcerated at the NHSP since 2013. Prior to his incarceration, Czekalski was under the care of medical specialists for the treatment of arthritis and asthma. Czekalski asserts that, since arriving at the NHSP, the arthritis pain in his knees, hip, spine, and shoulder has worsened, rendering him unable to sleep through the night and causing him severe pain throughout the day, and that the thin mattresses in use at the NHSP severely aggravate his arthritis pain. Czekalski's pain is not controlled by the ibuprofen and acetaminophen he takes.

Czekalski states that Wrenn, Mattis, Kench, and Fouts, have each obstructed the ability of his DOC treating physicians, DOC pain specialist Dr. Carey Rodd, and DOC psychiatrist Dr. Graves, to manage his chronic pain. Specifically, Czekalski asserts that defendants have blocked his access to a new thicker mattress for the bed in his cell, which he believes would improve his sleep and eliminate most of the pain he is presently suffering. Czekalski has alleged that defendants have not

answered his request to be allowed to stack two thin mattresses together while he awaits the issuance of a new thicker mattress.

Czekalski asserts that his prescriptions at the NHSP are neither promptly filled, nor promptly delivered once they are filled.  Since July 2017 when the system of automatic refills for most medications was implemented, Czekalski states that prescriptions have been generally filled on time, but typically take three to five days to be delivered to him.  Czekalski further asserts, however, with respect to prescriptions that have remained subject to the inmate refill form procedures, and are not automatically refilled, it is not uncommon for prescriptions to be filled 10 to 15 days after his supply has run out.  Czekalski asserts each named defendant was made aware of his concerns in this regard through grievances.

Czekalski specifically claims that the delay in filling or delivering his ibuprofen prescription has caused him debilitating pain, delay in delivering his Proscar prescription has caused him to have bloody urine, and delay in delivering his asthma inhalers has caused him respiratory distress.  Czekalski also asserts that he has not received the dual-medication maintenance inhaler he was prescribed prior to his incarceration to control his asthma.  He further alleges that for three years prior to April 2017, he was not prescribed the same amount of

3

ibuprofen he had been prescribed prior to his incarceration to control his arthritis pain. Czekalski asserts each named defendant was made aware of his concerns in this regard through grievances.

Czekalski asserts he receives his daily dose of prescribed antidepressants at a different time of day than that prescribed by DOC psychiatrist Dr. Graves, as the schedule for distributing his medications in the morning was altered for the convenience of prison staff. The timing of distribution of medications has caused Czekalski to choose between engaging in morning prayers and receiving treatment for a medical condition. Czekalski is unable to obtain a prescription for melatonin specifying that he take that medication in the manner he believes is appropriate, and he is unable to take acetaminophen at the dosage recommended by DOC pain specialist Dr. Carey Rodd because the NHSP requires him to purchase that medication through the canteen, but does not permit the canteen to sell the full dosage of medication recommended by Dr. Rodd. Czekalski asserts each named defendant was made aware of his concerns in this regard through grievances.

Czekalski, who is legally blind, has broken his eyeglasses, and he has been told that he must pay a fee to obtain new eyeglasses. In addition, NHSP officials will not issue

Czekalski boots in his size, which causes him to wear boots that
have given him blisters and increase his risk of tripping.
Czekalski asserts each named defendant was made aware of his
concerns in this regard through grievances.

Czekalski states that he suffers from PTSD and chronic
pain, conditions for which medical marijuana can be an effective
treatment.  Czekalski asserts that DOC refuses to make medical
marijuana available to inmates, and that a state law, N.H. Rev.
Stat. Ann. ("RSA") § 126-X:3, treats inmates differently than
those outside the prison with respect to the availability of
medical marijuana.  Czekalski asserts each named defendant was
made aware of his concerns in this regard through grievances.

While incarcerated at the Northern New Hampshire
Correctional Facility, Czekalski was sent to a hospital
emergency room in June 2015 to address his complaints of urinary
bleeding and clotting.  A CT scan revealed an indistinct mass in
Czekalski's bladder and a "bone island" in his pelvis, which had
the prospect of being a fast-moving cancer.  A urologist ordered
a follow up cystoscopy.  That procedure, which was performed
seven months after it was ordered, indicated that Czekalski did
not have cancer in his bladder or pelvis.  Medicine then
prescribed by the urologist stopped the bleeding and clotting in
less than a week.  Czekalski attributes the seven month delay in

the scheduling of the cystoscopy to dereliction by (former) DOC
Nurse Judy Baker, who he describes was a "known drunk," as Baker
cancelled Czekalski's appointments and lost his paperwork.
Czekalski claims that Baker's poor job performance was known to
her supervisors, Wrenn, Mattis, and Kench.


## II.  Claims Asserted in the Amended Complaint

Seeking compensatory damages, injunctive relief, and a
declaratory judgment against (former) DOC Commissioner Wrenn in
his individual and official capacities and the other defendants
in their individual capacities, Czekalski asserts the following
claims in the amended complaint (Doc. No. 5):

1.  Defendants William Wrenn, Christopher Kench, Paula
Mattis, and Jon Fouts violated Czekalski's Eighth Amendment
right to adequate medical care by blocking Czekalski's
access to a thicker mattress.

2.  Defendants Wrenn, Kench, Mattis, and Fouts violated
Czekalski's Eighth Amendment right to adequate medical care
by implementing an inmate prescription refill process that
has resulted in delays in Czekalski's receipt of
medications due to delays in filling prescriptions and
delivering medication.

3.  Defendants Wrenn, Kench, Mattis, and Fouts violated
Czekalski's Eighth Amendment right to adequate medical
care, in that:

a.  DOC policies adopted by defendants caused
Czekalski, from the date of his incarceration at the
DOC until April 24, 2017, to be denied access to the
800 mg of ibuprofen three times a day, the dosage he
was prescribed to treat his arthritis prior to his

6

incarceration;

b.    DOC policies adopted by defendants have caused
Czekalski to be denied access to the same type of
inhaler that had been prescribed to treat his asthma
prior to his incarceration;

c.    DOC policies resulted in a change in the timing
of Czekalski's receipt of a daily morning dose of
anti-depressants, in contravention of the dosing
schedule ordered by Dr. Graves;

d.    Czekalski has not received boots that are the
proper size and width for his feet, resulting in
severe blisters and an increased risk of tripping;

e.    DOC policies adopted by defendants have denied
Czekalski access to the dosage of acetaminophen his
treating physician, Dr. Rodd, recommended he take to
treat his arthritis;

f.    DOC policies adopted by defendants have denied
Czekalski access to an appropriate dosage of melatonin
on an appropriate schedule;

g.    The DOC has failed to replace Czekalski's broken
eyeglasses free of charge, without which he is legally
blind; and

h.    DOC policies adopted by defendants preclude
Czekalski from obtaining medical marijuana to treat
his PTSD and chronic pain.

4.    Defendants Wrenn, Kench, and Mattis violated
Czekalski's Eighth Amendment rights by failing to supervise
their (former) subordinate employee, DOC Nurse Judy Baker,
resulting in a delay in scheduling Czekalski for a follow-
up appointment for a cystoscopy between June 2015 and
January 2016.

5.    The change in the scheduled distribution of
Czekalski's morning dose of anti-depressants interferes
with his ability to engage in morning prayers, and has
thereby placed a substantial burden on Czekalski's
religious exercise, in violation of the Religious Land Use

and Institutionalized Persons Act ("RLUIPA").

6.   The state statute legalizing medical marijuana violates Czekalski's rights to equal protection by allowing DOC inmates to be denied a medical treatment that is available outside of prison.

## **Discussion**

### I.   **Preliminary Review of Amended Complaint (Doc. No. 5)[1]**

A.   Eighth Amendment:  Marijuana, Melatonin, and Shoes

An Eighth Amendment claim challenging the conditions of a prisoner's confinement has an objective and subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  "[T]he deprivation alleged must be, objectively, 'sufficiently serious,'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted).  In the medical care context, the objective component may be established by allegations regarding an unmet serious medical need, that is, "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Miranda-Rivera v. Toledo-Davila, 813 F.3d

---

[1]In conducting preliminary review of the amended complaint (Doc. No. 5), the court employs the standards set forth in the court's January 19, 2018 Order (Doc. No. 2) in this case.

64, 74 (1st Cir. 2016).  The subjective component of an Eighth
Amendment claim requires the plaintiff to demonstrate that the
prison officials acted with deliberate indifference to the
plaintiff's health or safety.  See id.  "'[M]ere negligence'" is
insufficient to support an Eighth Amendment claim.  Mosher v.
Nelson, 589 F.3d 488, 494 (1st Cir. 2009).

    B.    Supervisory Liability

    Supervisory liability for a claim asserted under 42 U.S.C.
§ 1983 lies only where "an affirmative link between the behavior
of a subordinate and the action or inaction of his supervisor
exists such that the supervisor's conduct led inexorably to the
constitutional violation." Maldonado v. Fontanes, 568 F.3d 263,
275 (1st Cir. 2009) (internal quotation marks and citation
omitted).

> A plaintiff can establish that "affirmative link" by
> alleging that the supervisor was "a primary violator or
> direct participant in the rights-violating incident," or
> that "a responsible official supervises, trains or hires a
> subordinate with deliberate indifference toward the
> possibility that deficient performance of the task
> eventually may contribute to a civil rights deprivation."

Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015)
(citations omitted).

    Plaintiff's allegations regarding his lack of access to
medical marijuana, the doses of melatonin he receives, and his
ill-fitting shoes all fail to state Eighth Amendment claims upon

which relief can be granted.  While plaintiff asserts generally
that medical marijuana is a "highly effective" treatment for
PTSD and chronic pain, nothing before the court suggests that
any medical professional has ever prescribed medical marijuana
for Czekalski.  Moreover, nothing suggests that plaintiff has
otherwise been denied treatment for those conditions while
incarcerated.  Plaintiff's allegations regarding the
restrictions on his ability to obtain marijuana inside the
prison to treat those conditions is in the nature of a claim
that he is not able to obtain the prescription he desires in
prison.  Cf. Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir.
2007) ("substandard care . . . and disagreement as to the
appropriate course of treatment are all insufficient to prove a
constitutional violation").  Such allegations do not state a
claim upon which relief can be granted for a violation of
Czekalski's rights under the Eighth Amendment.  Accordingly,
Claim 3(h) should be dismissed.

Similarly, plaintiff's allegations regarding melatonin do
not state a claim upon which relief can be granted.  Plaintiff
alleges that he receives melatonin for sleep problems at the
NHSP, but that the dosage schedule for the melatonin is neither
appropriate nor sustainable.  Plaintiff has alleged that he
grieved the problems relating to the timing of his receipt of

melatonin.  He has not alleged facts showing, however, that the supervisory defendants to whom he grieved those issues are subjectively aware that failing to alter the circumstances regarding melatonin distribution and failing to take steps to ensure that the drug remains effective in plaintiff's case exposes Czekalski to any substantial risk of serious harm. Accordingly, the claim regarding melatonin (Claim 3(f)) should be dismissed.

By the same token, plaintiff has not asserted facts showing that the blisters and the tripping hazard he suffers due to ill-fitting shoes has exposed him to a substantial risk of serious harm, or that in failing to respond to his grievances in a manner that would ensure Czekalski receive proper footwear, defendants have acted with subjective knowledge that ill-fitting shoes, blisters, and a shoe-related tripping hazard expose plaintiff to any substantial risk of serious harm.  Accordingly, Czekalski's Eighth Amendment claim relating to his shoes (Claim 3(d)) should be dismissed.

    B.    Equal Protection and Medical Marijuana

    "'The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government.'"  Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015) (citation omitted).  "To establish an equal

11

protection claim, a plaintiff needs to allege facts showing that
'(1) the [plaintiff], compared with others similarly situated,
was selectively treated; and (2) that such selective treatment
was based on impermissible considerations such as race,
religion, intent to inhibit or punish the exercise of
constitutional rights, or malicious or bad faith intent to
injure'" the plaintiff.  Id. at 132-33 (citation omitted).

The state law authorizing medical marijuana prescriptions
provides that a person is not exempt from arrest or prosecution
for possessing marijuana in a correctional facility, and further
provides that nothing in the law requires inmates in
correctional facilities to be prescribed marijuana.  See RSA
§ 126-X:3, II(d)(3) & III(c).  The legislative distinction
between prisons and other places in the state, and between
inmates and non-inmates, does not differentiate based on any
protected class, and does not bear any markers of an intent to
inhibit or punish the exercise of constitutional rights.  The
distinction is reasonably related to a legitimate governmental
interest in limiting the distribution of marijuana, a substance
that is not legally prescribed under federal law, and in
treating prisons where drugs can become contraband, and prison
inmates, who may be drug offenders, differently from other
places and people in the state.  Accordingly, Claim 6 should be

dismissed.

    C.    <u>RLUIPA</u>

While the First Circuit has not yet decided the issue, this court deems persuasive the reasoning of those courts that have decided that RLUIPA does not authorize claims for damages against defendants in their individual capacities. <u>See, e.g.</u>, <u>Staples v. N.H. State Prison</u>, No. 16-cv-033-PB, 2017 DNH 023, 2017 WL 519189, at *2, 2017 U.S. Dist. LEXIS 17895, at *7 (D.N.H. Feb. 8, 2017). Accordingly, plaintiff's RLUIPA claims for damages asserted against any defendants in their individual capacities should be dismissed.

    D.    <u>Eleventh Amendment</u>

The Eleventh Amendment bars claims for damages asserted against defendants in their official capacities. <u>See</u> <u>Sossamon v. Texas</u>, 131 S. Ct. 1651, 1660 (2011) (RLUIPA does not abrogate state's sovereign immunity from damage claims); <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 287 (D.N.H. 2003) (Section 1983 does not abrogate state's sovereign immunity, and state has not waived it). Accordingly, the court should dismiss all claims for damages asserted against defendants in their official capacities.

    E.    <u>Remaining Claims</u>

Without prejudice to defendants' ability to move to dismiss

the remaining claims upon any appropriate basis, the court has
directed, in the Order issued this date, that the claims and
allegations summarized above as Claims 1, 2, 3(a), 3(b), 3(c),
3(e), 3(g), 4, and 5, be served upon defendants.

## II.  <u>Motion to Certify Class & Appoint Counsel (Doc. No. 3)</u>

Czekalski has moved for an order certifying this action as
a class action, and appointing counsel to represent the class.
Czekalski estimates that the members of the prisoner class may
number in the hundreds or thousands, depending on the claim at
issue.  Czekalski clarifies that if this matter is not certified
as a class action, he does not seek an appointment of counsel
for himself to litigate his own claims.

A Rule 23 class action is an action in which "[o]ne or more
members of a class" are authorized to sue "as representative
parties on behalf of all [class] members."  Fed. R. Civ. P. 23.
To qualify as a class action under Rule 23, a case must have the
following characteristics:  (1) too many plaintiffs to join
through a typical joinder motion ("numerosity"), (2) certain
common factual or legal issues shared by each member of the
class ("commonality"), (3) a named plaintiff whose claim is
typical of the claims of the unnamed plaintiffs ("typicality"),
and (4) a named plaintiff who is an adequate representative of

the unnamed plaintiffs' interests ("adequacy").  Fed. R. Civ. P.
23(a); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).
A case cannot proceed as a class action under Rule 23 unless it
is certified as such by the court.  Fed. R. Civ. P. 23(c)(1).
"[A] district court's decision to certify a class must precede
the appointment of class counsel."  Sheinberg v. Sorensen, 606
F.3d 130, 132 (3d Cir. 2010) (emphasis in original) (citing Fed.
R. Civ. P. 23(g)).

Czekalski is a former attorney.  He was disbarred in August
2017 because of the convictions underlying his current
incarceration.  See In re Czekalski, No. LD-2013-0003 (N.H. Aug.
21, 2017).  Czekalski asserts he has not had success in finding
an attorney who would represent the inmate class on a
contingency fee basis in this case, although he has not detailed
any of the steps he has taken in seeking such counsel.

"As a general rule . . . an individual appearing pro se may
not represent other individuals in federal court, see 28 U.S.C.
§ 1654, and courts have routinely denied a prisoner's request to
represent a class of prisoners without the assistance of
counsel."  Vazquez v. Fed. Bureau of Prisons, 999 F. Supp. 2d
174, 177 (D.D.C. 2013) (citing cases).  "[I]t is generally not
an abuse of discretion for a district court to deny a motion for
class certification on the ground that a pro se litigant is not

an adequate class representative." Howard v. Pollard, 814 F.3d
476, 478 (7th Cir. 2015) (emphasis in original).

In light of Czekalski's pro se status here and his
disbarment, the motion for class certification should be denied,
as Czekalski has failed to show that he can adequately represent
the interests of the class as the representative plaintiff.
Insofar as the court should deny the motion for class
certification (Doc. No. 3), the court should also deny the
request for appointment of class counsel. See Howard, 814 F.3d
at 478.

III. **Preliminary Injunctive Relief (Doc. No. 4)**

A.   Background Relating to Motion (Doc. No. 4)

Czekalski asserts that after he filed this lawsuit, he
received notice that officers planned to implement DOC Policy
and Procedure Directive ("PPD") 9.02(N) by seizing legal
materials he has accumulated in his cell. PPD 9.02(N) provides,
in pertinent part, that an inmate may keep legal materials in
his cell in an amount that does not exceed the volume of a two
cubic foot storage tote. PPD 9.02(N) provides that legal
materials exceeding that volume may be confiscated and subjected
to a 5-day notice procedure in which the inmate's materials are
subject to being destroyed five days after receipt of a notice

16

unless, during those five days, the inmate arranges for the
confiscated materials to be picked up or provides an address
where confiscated materials may be sent.  See generally Towle v.
Warden, No. 15-cv-117-SM, 2017 U.S. Dist. LEXIS 30642, at *2,
2017 WL 888733, at *1 (D.N.H. Jan. 30, 2017), R&R approved, 2017
U.S. Dist. LEXIS 30359, 2017 WL 875800 (D.N.H. Mar. 3, 2017),
appeal filed, No. 17-1251 (1st Cir. Mar. 23, 2017).

In February 2018, at the same time he filed the amended
complaint (Doc. No. 5), Czekalski moved for preliminary
injunctive relief to prohibit DOC staff from seizing his legal
materials.  See Doc. No. 4.  The district judge referred that
request to the magistrate judge, directed that Czekalski retain
reasonable access to his legal materials, and prohibited
defendants from destroying those legal materials, pending
further court order.  See Feb. 9, 2018 Order (Doc. No. 6).  A
hearing on the motion was held on February 23, 2018, at which
evidence was received through offers of proof.

At the February 23, 2018 hearing, Czekalski stated that he
has a number of active or anticipated legal proceedings for
which he needs access to information that is available to him
only in paper form.  He stated that his legal materials
currently exceed the volume that he is able to keep within the
two cubic foot box he is allowed to keep in his cell.  He

estimated that right now his legal materials exceed the volume
of the box by approximately twenty-five percent.

Czekalski requested a waiver of PPD 9.02(N), which the
warden denied in February 2018.  Czekalski has stated that he is
continuing to grieve issues relating to the warden's decision,
and that NHSP Capt. Burke and NHSP Lt. Hill told him that they
would confiscate his excess materials while his appeal is
pending.  Czekalski has not yet suffered the seizure of any
legal materials, and he has not received a 5-day notice.

Counsel for defendants, Attorney Francis Fredericks, stated
that Warden Michael Zenk would testify regarding procedures that
would apply if PPD 9.02(N) were implemented in Czekalski's case.
Counsel for defendants represented that those procedures have
been approved by the DOC Commissioner and would be implemented
in Czekalski's case if Zenk were no longer the warden.  Attorney
Fredericks also stated that Zenk would testify that the excess
amount of materials described by Czekalski is not likely to be
deemed sufficient to warrant seizure under PPD 9.02(N) at this
time, but that such seizure could occur if the volume increases.
Zenk would testify that before any of Czekalski's legal
materials are seized under PPD 9.02(N), Czekalski would be given
time to reduce the amount of paperwork in his possession to what
is permitted by policy.  Attorney Fredericks stated that only if

Czekalski refused to reduce the volume of his paperwork, would

an officer be likely to seize all of Czekalski's legal

materials; otherwise, only the amount that could not fit into

the two cubic foot storage tote would be confiscated.  At the

time of confiscation, a five-day notice would be issued for the

seized materials.  Czekalski could appeal the issuance of the

five-day notice to the warden, and while that appeal is pending,

the five-day notice would be stayed, and the confiscated

materials would be placed in a container in the main property

room, which is a locked property office.  The inmate would

obtain access to those materials by submitting an inmate request

slip to the Unit Captain, proffering in that inmate request slip

that access to the materials is necessary for a court action.

Access would then be granted to that inmate, ordinarily in seven

days, and the request could be prioritized if the inmate

demonstrated the existence of exigent circumstances.  If the

warden then determined that a waiver of the five-day notice

procedures was appropriate, the excess materials would be

transferred to the custody of the inmate's case manager for

storage in the case manager's office.  Thereafter, to access his

materials, the inmate could submit a request slip to the case

manager, who would grant the inmate access to those materials,

ordinarily within seven days.  The court received assurances

19

from Attorney Fredericks and Attorney Lynmarie Cusack,
addressing the court during the February 23, 2018 hearing, as
counsel for the Department of Corrections, that the current DOC
Commissioner Helen Hanks was aware of and had approved the
procedures described above, through offers of proof as to Warden
Zenk's testimony, while she was Assistant Commissioner, and that
those procedures would be implemented at NCF and the NHSP, even
if Zenk were no longer the NHSP warden.

Defendants' counsel further represented that, for the
duration of this proceeding, through an appeal, Czekalski's
legal materials would not be destroyed, and he would be afforded
"reasonable access" to those materials, in the manner described
above, whether those materials remain in Czekalski's cell, or
are seized pursuant to PPD 9.02(N).  Attorney Cusack further
stated that defendants are willing to remaining subject to the
terms of the February 9 Order (Doc. No. 6), prohibiting the
destruction of Czekalski's legal materials and affording
Czekalski reasonable access to those materials, for the duration
of the proceeding through an appeal.

    B.  Standard

    "'A plaintiff seeking a preliminary injunction must
establish that he is likely to succeed on the merits, that he is
likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted).  The likelihood of success and irreparable harm are the factors that weigh most heavily in the analysis.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) ("'[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered'" (citation omitted)).  The burden of proof is on the movant.  See Esso Std. Oil Co., 445 F.3d at 18.

"Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Id.

C.   Likelihood of Success

The claim underlying the motion for a preliminary injunction is a claim of denial of access to the courts, a claim that plaintiff has not expressly moved to add to this case.  To

state such a claim, plaintiff must show "that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented" due to the deprivation of his legal materials.  Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 WL 205290, at *1, 1997 U.S. App. LEXIS 8616, at *2–*3 (1st Cir. Apr. 25, 1997) (unpublished table decision) (citing Lewis v. Casey, 518 U.S. 343 (1996)).  "[T]he injury requirement is not satisfied by just any type of frustrated legal claim."  Lewis, 518 U.S. at 354.  Inmates are only denied access to the courts if they are injured in their attempt to pursue a direct appeal of a criminal conviction, a habeas petition, or civil rights actions taken "to vindicate 'basic constitutional rights.'"  Id. (citation omitted).  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id. at 355 (emphasis in original).

At this point, PPD 9.02(N) has not been implemented in a manner that affects Czekalski's ability to litigate any case. Czekalski's legal materials have not been seized, and he has not received a five-day notice.  Defendants, through offers of proof, have described a process where Czekalski may retain reasonable access to his legal materials in the event they are seized.

Furthermore, Czekalski has not demonstrated that he has exhausted his available administrative remedies relating to the effect of PPD 9.02(N) on his ability to retain legal materials in his cell.  Claims concerning prison conditions that have not been exhausted are subject to dismissal.  See 42 U.S.C. § 1997e(a); Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). Therefore, Czekalski has not demonstrated a likelihood of success on the merits of the claim underlying his motion for a preliminary injunction in this case.

D.    Irreparable Harm

The court takes the offer of proof relating to Zenk's testimony to be an accurate description of the procedures that would be followed at the NHSP with respect to Czekalski's legal materials.  Czekalski has not demonstrated that he is likely to suffer irreparable harm in the absence of injunctive relief, as he does not presently face a high risk of seizure of his legal materials, he would be afforded an opportunity to consolidate his materials before any are seized, he would be issued a five-day notice, he could appeal for a waiver of the five-day notice which would stay its effect, no materials would be destroyed during that stay, the confiscated materials would be stored in a secure location in the main property office, he would retain reasonable access to those materials (and to the materials in

23

the storage tote in his cell) while that appeal is pending, and if his appeal for a waiver of the five day notice were successful, he would retain reasonable access to the materials in his cell which he could switch out and to the confiscated materials, which would be stored in a secure location in the case manager's office, while his cases remain active. Accordingly, Czekalski has not demonstrated irreparable harm, and his motion for a preliminary injunction (Doc. No. 4) should be denied.

Notwithstanding counsel's representation that defendants would be willing to remain subject to the conditions relating to reasonable access and the prohibition on destroying legal materials in the February 9 Order (Doc. No. 6) through any appeal of an order on Document No. 4, those court-ordered restrictions appear to be unnecessary going forward, given the offers of proof and assurances provided by defendants' counsel in the February 23, 2018 hearing. Therefore, that part of the February 9 Order (Doc. No. 6) should be vacated, given the offers of proof as to procedures DOC will follow in implementing PPD 9.02(N) in Czekalski's case, and the assurances provided by defendants' counsel in the February 23, 2018 hearing, as detailed in Part III of this R&R.

## Conclusion

For the foregoing reasons, the district judge should approve this R&R (hereinafter "March 2018 R&R") and should direct as follows:

1.    Claims 3(d), 3(f), 3(h), and 6, as numbered in the March 2018 R&R; all claims for damages asserted against any defendant in his or her official capacity; and claims for damages under RLUIPA asserted against defendants in their individual capacities, are DISMISSED.

2.    The motion to certify a class and to appoint class counsel (Doc. No. 3) is DENIED.

3.    The motion for a preliminary injunction (Doc. No. 4) is DENIED, without prejudice to refiling, as appropriate, should defendants fail to follow the procedures outlined at the February 23, 2018 hearing, as detailed in Part III of the March 2018 R&R.  The claim asserting interference with plaintiff's right of access to the courts, upon which that motion is based, may not proceed in this case at this time, and is DISMISSED, without prejudice to filing in a civil rights case, as appropriate, after that claim is ripe and exhausted.

4.    Based on the assurances provided in the February 23, 2018 hearing, as detailed in Part III of the March 2018 R&R, the court VACATES the part of the February 9 Order (Doc. No. 6), directing that defendant Jon Fouts "in his individual and official capacities may not destroy any of [Czekalski's] legal materials . . . and must grant plaintiff reasonable access to such materials, pending further order of this court."

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen day period may be extended upon motion.  Failure to file objections within the specified

time waives the right to appeal the district court's order.  See

Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir.

2016).


                              _Andrea K. Johnstone_
                              Andrea K. Johnstone
                              United States Magistrate Judge

March 2, 2018

cc:  Jason A. Czekalski, pro se
     Francis Charles Fredericks, Esq.
     Lynmarie C. Cusack, Esq.