**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Jason A. Czekalski

    v.                                         Civil No. 17-cv-557-JL
                                                   Opinion No. 2022 DNH 040
William Wrenn, New Hampshire Department
of Corrections Commissioner; Christopher
Kench; Paula Mattis; and Jon Fouts


# O R D E R

Before the court is the post-judgment motion (Doc. No. 142), filed by Jason A. Czekalski, a prisoner in the custody of the New Hampshire Department of Corrections ("DOC"), asking this court to reopen and vacate the March 31, 2021 judgment and the March 31, 2021 Order (Doc. No. 136) ("March 31 Order") underlying that judgment, to the extent that order granted the defendants' motion for summary judgment. Mr. Czekalski also asks the court to schedule a trial on his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims, and Eighth Amendment claims concerning his mattress, medication, and prescription refills.

The defendants object, see Doc. No. 143, observing that there is no error in the March 31 Order, and that Mr. Czekalski's motion is based on evidence and arguments he raised before entry of judgment, which the court previously deemed

unavailing, and on information which he could have (and should
have) presented then.  Substantially for reasons expressed in
the defendants' objection, and also because of his post-judgment
transfer from the New Hampshire State Prison for Men ("NHSP") to
the Northern New Hampshire Correctional Facility ("NCF"), which
has mooted his RLIUPA claim for injunctive relief, Mr.
Czekalski's post-judgment motion is denied.[1]


## **Discussion**

I.   Applicable Standard

     A.   Which Rule Applies

     Mr. Czekalski entitled his post-judgment motion, "Certified
Motion for Amended and/or Additional Findings under Rule 52(b)."
Doc. No. 142.  Rule 52(b) provides, as follows:

> On a party's motion filed no later than 28 days after
> judgment, the court may amend its findings – or make
> additional findings – and may amend the judgment
> accordingly.  The motion may accompany a motion for a
> new trial under Rule 59.

Fed. R. Civ. P. 52(b) (citing Fed. R. Civ. P. 59).

     "In addressing a post-judgment motion a court is not bound
by the label that the movant fastens to it."  Vasapolli v.

---

[1] Mr. Czekalski has not challenged the March 31 Order with
respect to his Eighth Amendment claim relating to his broken
eyeglasses, identified in the March 31 Order as Claim 3(g).
Nothing in the record suggests a reason for the court to
reconsider the March 31 Order to the extent it granted
defendants' motion for summary judgment on that claim.

Rostoff, 39 F.3d 27, 36 (1st Cir. 1994).  In light of the
arguments Mr. Czekalski makes and the relief he seeks, this
court construes his post-judgment motion as seeking to reopen
the judgment and reconsider the March 31 Order under Rule 59(e),
as well as under Rule 52(b).


    B.    Applicable Standard

    "The purpose of Rules 52(b) and 59(e) is to allow the court
to correct or amend a judgment in the event of any manifest
errors of law or newly discovered evidence." Perrier-Bilbo v.
United States, 954 F.3d 413, 435-36 (1st Cir.), cert. denied,
141 S. Ct. 818 (2020).  In general, successful motions for
reconsideration must show an intervening change in the law, a
manifest error of law or fact underlying the judgment, newly-
discovered evidence that could not have been produced before the
entry of judgment, or manifest injustice if reconsideration is
denied.  See Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21,
32 (1st Cir. 2012) (citing Marie v. Allied Home Mortg. Corp.,
402 F.3d 1, 7 n.2 (1st Cir. 2005)).

    Post-judgment motions under Rules 52(b) and 59(e) do not
provide a place for fielding new squads of theories, arguments,
or proof that could have been put in play before entry of
judgment.  See Perrier-Bilbo, 954 F.3d at 435-36 (citing cases).
Courts will not reopen a judgment and reconsider its underlying

factual findings and legal conclusions based on any arguments or evidence that the moving party could have, and should have, raised before the decision issued.  See Banister v. Davis, 140 S. Ct. 1698, 1703 (2020) (Rule 59(e)); Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc., No. 17-CV-12239-ADB, 2022 U.S. Dist. LEXIS 42449, at *12, 2022 WL 715578, at *4 (D. Mass. Mar. 10, 2022) (Rule 52(b)); Advanced Fluid Sys., Inc. v. Huber, 381 F. Supp. 3d 362, 382 (M.D. Pa. 2019) ("Neither Rule 52 nor Rule 59 are intended to allow parties the proverbial "'second bite at the apple.'" (citation omitted)), aff'd, 958 F.3d 168 (3d Cir. 2020).

## Discussion

I.   Eighth Amendment Claims

Mr. Czekalski challenges the March 31 Order for failing to address his Eighth Amendment injunctive relief claims separately from his Eighth Amendment claims for damages.  Specifically, he argues, if the court were to find that the DOC mattress policy is "illegal," and if there is no other "reasonable method of controlling [his] pain," the court could still grant relief on his Eighth Amendment claims, even without finding any defendant was deliberately indifferent.  Doc. No. 142, at 1-2.

Mr. Czekalski's argument lacks any basis in the law. Irreparable harm and a finding of liability are both necessary

4

preconditions to granting injunctive relief.  Permanent
injunctive relief may not be granted in the absence of a showing
of actual success on the merits.  Largess v. Sup. Jud. Ct. for
Mass., 373 F.3d 219, 224 n.2 (1st Cir. 2004); Doe v. N.H. Dep't
of Corr. Comm'r, No. 21-cv-604-LM, 2022 DNH 023, 2022 U.S. Dist.
LEXIS 39856, at *5, 2022 WL 673251, at *2 (D.N.H. Mar. 7, 2022).
To obtain any relief on his Eighth Amendment claims, the
plaintiff must establish that at least one defendant was
deliberately indifferent to a substantial risk of serious harm,
or that at least one defendant acted with wanton disregard, akin
to criminal recklessness, of the conditions that Mr. Czekalski
alleges deny him the minimal civilized measure of life's
necessities.  See Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir.
2020); see also Farmer v. Brennan, 511 U.S. 825, 847 (1994) ("a
prison official may be held liable under the Eighth Amendment
for denying humane conditions of confinement only if he knows
that inmates face a substantial risk of serious harm and
disregards that risk by failing to take reasonable measures to
abate it").  Evidence of a policy's unreasonableness or
illegality, untethered from a showing of any defendant's
deliberate indifference, will not suffice to avoid summary
judgment on his Eighth Amendment claims.  See Farmer, 511 U.S.
at 837 ("The Eighth Amendment does not outlaw cruel and unusual
'conditions'; it outlaws cruel and unusual 'punishments.'").

II.  Mattress (Claim 1)

Mr. Czekalski seeks reconsideration of the decision to grant defendants' motion for summary judgment on his Eighth Amendment claim alleging he was denied a mattress as necessary to improve his sleep and reduce his need for medications to treat his chronic pain (Claim 1).  To avoid summary judgment on that claim, Mr. Czekalski needed to adduce evidence to allow a reasonable factfinder to conclude that the acts or omissions of at least one defendant amounted to deliberate indifference to a substantial risk of serious harm.  Id. at 834.  And to the extent that claim challenged the medical care he received, or the alleged failure to treat his medical condition, the test is whether at least one defendant has been deliberately indifferent to his "serious medical needs," either those that have been diagnosed as requiring treatment or those that are so obvious that a layperson could easily recognize the need for medical attention.  Doc. No. 136, at 14 (citing cases).

As to the existence of a serious medical need, there is no dispute that Mr. Czekalski suffers from diagnosed conditions of chronic pain.  The March 31 Order turns, however, on the absence of evidence that any health care provider has ever expressed the opinion that a different, thicker, or new mattress was medically necessary for Mr. Czekalski.  Not even the report prepared by

Mr. Czekalski's NHSP physician Dr. Carey Rodd expresses that opinion, <u>see</u> Doc. No. 125-7, although that report was prepared for purposes of this lawsuit at Mr. Czekalski's request, after Dr. Rodd was no longer employed at the NHSP.  Mr. Czekalski points to no new evidence or manifest error of law or fact in that regard.

Mr. Czekalski argues here that people do not need an expert's opinion to understand the connection between better mattresses, better sleep, and better health.  Additionally, he reports that his own blood pressure readings and self-reported pain-level indicators (including how well he slept and how many pain relievers he took each day) all improved when he slept on a thicker or newer mattress.

Mr. Czekalski's argument in that regard is both speculative and beside the point.  The Eighth Amendment does not require prisons to provide inmates with health-promoting bedding or non-pharmaceutical solutions for better health; it requires prison officials not to be deliberately indifferent to each inmate's serious medical needs, or to any substantial risks of serious harm to them.  Mr. Czekalski points to no manifest error of law or fact in the court's conclusion that he needed medical evidence and expert testimony tying his medical needs to the mattress he was using, to avoid summary judgment on Claim 1.

Furthermore, even if Mr. Czekalski could persuade a rational factfinder that he had been subjected to a substantial risk of serious harm by using the mattress he claims was inadequate, the absence of evidence of any defendant's deliberate indifference to that risk is enough to avoid reconsideration of the March 31 Order.  Mr. Czekalski rehashes his arguments that only physical manipulation of the mattress would reveal its condition, and that the defendants who responded to his grievances were aware that the standard-issue mattresses compressed quickly over time, causing him pain.  The March 31 Order explains why the evidence regarding the manner in which several of the defendants (Major Fouts and Christopher Kench) responded to his grievances and complaints, did not suffice to generate a triable issue of their deliberate indifference, or the deliberate indifference of any other named defendant.  Nothing in the motion at issue here warrants reopening the judgment or reconsidering those findings.

III. Prescription Refills (Claim 2)

As to Mr. Czekalski's prescription refill claim (Claim 2), this court granted the motion for summary judgment upon finding the steps outlined in the July 4, 2020 Declaration of Samuel Fiore, R. Ph. (Doc. No. 122-14) ("Fiore Declaration"), to be a reasonable response to the prescription refill delay problem

precluding a finding of deliberate indifference.  Those steps
included, among other things, recruiting staff and hiring an
outside contractor to eliminate the refill backlog that had
resulted from staffing shortages, maintaining open purchase
orders at local pharmacies to reduce out-of-stock delays, and
directing inmates to have prescriptions refilled at sick call,
to address their immediate unmet medication needs.  See Cox v.
Nobles, 15 F.4th 1350, 1360 (11th Cir. 2021) ("the
reasonableness of the response is dependent upon the exigence of
the specific circumstances"), cert. denied, 142 S. Ct. 1178
(2022); Alcorta v. Warden, FCI Berlin, No. 21-CV-250-PB, 2021
U.S. Dist. LEXIS 167832, at *6, 2021 WL 3934355, at *2 (D.N.H.
July 27, 2021) (finding evidence of reasonableness of response
to COVID-19 in reduction of number of cases), R&R adopted, 2021
WL 3930741, 2021 U.S. Dist. LEXIS 166824 (D.N.H. Sept. 1, 2021).

     In his motion to reconsider, Mr. Czekalski reiterates and
expands upon matters asserted in his objection to defendants'
summary judgment motion, specifically, that it took four years
for the prison to fix the prescription refill problem.  In
addition, he describes his experience with using sick call to
obtain prescription refills as ineffective, as "it still took
days after going to sick call to receive an already late
prescription."  Doc. No. 142, at 6-7.

This court declines to reopen the judgment on the basis of evidence regarding the time it took to address the problem, as such information was previously presented and deemed unavailing in the March 31 Order.  Moreover, the court declines to reopen the judgment based on the evidence offered here for the first time, regarding the inadequacy of sick call visits, which Mr. Czekalski could have presented prior to the entry of judgment. See Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) ("'A party who sits in silence and withholds potentially relevant information . . . does so at his peril.'" (brackets omitted) (citing Vasapolli, 39 F.3d at 36-37)).  Mr. Czekalski fails to highlight any manifest error of fact or law in the March 31 Order.

But even if Mr. Czekalski could demonstrate a triable issue regarding the matters described in the Fiore Declaration, he has failed to demonstrate that there is any manifest error of fact or law in granting the supervisory official defendants' motion for summary judgment on Claim 2.

> "[D]eliberate indifference alone does not equate with supervisory liability," but rather "[c]ausation [is also] an essential element, and the causal link between a supervisor's conduct and the constitutional violation must be solid." . . . [T]he causation requirement "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation."

Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021) (citations
omitted).  No such evidence of direct, inexorable causation or
deliberate indifference may be found here.

It is undisputed that, in response to his multiple Inmate
Request Slips ("IRS"), prison staff members advised Mr.
Czekalski to go to sick call for refills, see Doc. Nos. 29-2, at
2 & 125-9, at 3; and Mr. Czekalski has presented no evidence
suggesting that any named defendant was subjectively aware that
sick call visits did not yield timely refills for him.
Moreover, defendants and their subordinates explained in
answering Mr. Czekalski's grievances in 2016/2017 that the
pharmacy problems were under review, that the facility was
seeking a remedy, and that Mr. Czekalski's suggestions were
noted.  See Doc. No. 29-2, at 3-5.  It is further undisputed
that the steps set forth in the Fiore Declaration represent a
remedy that ultimately worked.  See Doc. No. 142, at 6.

No reasonable factfinder presented with the summary
judgment record could find any named defendant's conduct to
manifest deliberate indifference that directly and inexorably
caused Mr. Czekalski to be exposed to a substantial risk of
serious harm due to his inability to obtain prescription refills
without delays.  For those reasons, and as explained in
defendants' objection, see Doc. No. 143, at 6-7, the court
denies Mr. Czekalski's motion to reconsider its ruling as to

defendants' motion for summary judgment on the prescription refill claim (Claim 2).

IV.  <u>Pain Medication and Inhaler</u>

    A.  <u>Acetaminophen (Claim 3(e))</u>

    The court's decision to grant defendants' motion for summary judgment as to Mr. Czekalski's Claim 3(e), regarding his access to high doses of acetaminophen, turned on the absence of evidence from which a reasonable factfinder could infer any named defendant's subjective awareness of a failure to treat his serious medical needs.  The grievance documents in the summary judgment record do not include Mr. Czekalski's complaint that he could not buy as much acetaminophen per week as he needed, which he based upon his providers' advice not to exceed up to 4000 mg of acetaminophen per day.  Mr. Czekalski points to no other non-speculative evidence demonstrating that any named defendant was aware that he had a serious medical need for high doses of acetaminophen exceeding the amount he could buy from the canteen in the relevant time period.  Absent any new evidence or showing of any error of law or fact in that regard, the court denies Mr. Czekalski's motion to reconsider as to Claim 3(e).

B.    Ibuprofen and Inhaler (Claims 3(a) and 3(b))

With respect to the court's disposition of his claims regarding ibuprofen and the asthma inhaler, Mr. Czekalski's motion to reconsider is denied.  He rehashes the same arguments previously considered and rejected by the court, and he fails to show that there is any new evidence, change in the law, or manifest error in the March 31 Order's conclusion that those claims (Claims 3(a) and 3(b)) reflected only a dispute between plaintiff and his health care providers as to the appropriate course of treatment for his medical needs, which cannot form the basis for relief on his Eighth Amendment claims, as to any of the non-medically-trained prison officials he has named as defendants.


V.   Cystoscopy (Claim 4)

For reasons stated in defendants' objection, Doc. No. 143, at 10-11, the motion to reconsider the March 31 Order's disposition of Claim 4 is denied.  Plaintiff makes no showing of any manifest error of law or fact underlying the relevant ruling; his assertions here simply resurrect the same arguments he previously made.

## VI.  Eighth Amendment Prozac Claim (Claim 3(c))

The March 31 Order's pretrial disposition of Mr. Czekalski's Eighth Amendment Prozac claim (Claim 3(c)) hinged on the absence of evidence that he had a serious medical need requiring a dose of Prozac no earlier than mid-morning.  The motion to reconsider does not demonstrate any manifest error of law or fact concerning that issue or otherwise show why the judgment on that claim should be reopened.  Accordingly, the court denies the motion to reopen to the extent it seeks to revisit the disposition of Claim 3(c).

## VII. RLUIPA Prozac Claim (Claim 5)

The March 31 Order's disposition of Mr. Czekalski's RLUIPA claim turned on the lack of evidence to support a reasonable finding that the shift in the timing of the NHSP's morning medication distribution schedule substantially burdened, and did not merely inconvenience, his morning prayer practices. Considering Mr. Czekalski's sworn testimony and statements, the court in that Order had calculated that Mr. Czekalski would need to arise thirty minutes earlier on weekdays to avoid a time-conflict between his prayers and the distribution of medication during "A Call," and that on some or all of those days, he could choose instead to receive medication during sick call.

In his post-judgment motion, Mr. Czekalski has clarified
that because he also needs time to wash and dress each morning,
see Doc. No. 142, at 10-11, he would need to arise at 4:30 a.m.
each week day and weekend when he prays, to avoid the prayer-
time/A-Call medication distribution time problem.  And he has
further expanded on the reasons why he does not avail himself of
sick call to receive his morning dose of Prozac, namely, that to
do so, he would miss the classes he takes to receive "earned
time credits."

Mr. Czekalski could have, and should have offered such
evidence sooner.  He provides no explanation in his motion to
reconsider why he chose not to offer the same sworn statements
before judgment entered.  That reason alone is grounds to deny
his motion for reconsideration.

There is also an independent, alternative jurisdictional
ground for denying the motion to reopen the judgment with regard
to Claim 5, which the parties have not briefed but this court
cannot fail to observe.  Mr. Czekalski has been transferred to
the NCF since judgment entered in this case.

In general, a prisoner's transfer moots his claims for
injunctive relief challenging prison conditions or policies at
his place of confinement.  See Ford v. Bender, 768 F.3d 15, 29
(1st Cir. 2014).  "[T]he newly situated inmate has no further
need for such declaratory or injunctive relief, for he is free

15

of the policy or practice that provoked his lawsuit in the first place." Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007).

All of Mr. Czekalski's claims, including his RLUIPA claim (Claim 5), concern the conditions at his previous place of confinement, the NHSP in Concord, New Hampshire.  And the only relief available on Mr. Czekalski's Prozac RLUIPA claim is injunctive relief.  See Apr. 10, 2018 Order (Doc. No. 19) (approving Mar. 2, 2018 R&R (Doc. No. 10)).

NCF is a different DOC facility, with a different prison population, a different set of corrections officers under the supervision of a different warden, and different health care providers who can adjust his prescriptions and dosages to meet his current circumstances.  The record lacks any evidence that the NHSP morning Prozac distribution procedures that concerned Mr. Czekalski at the NHSP have been applied to him at NCF, and no evidence suggesting that the supervisory defendants named as defendants in this case have ever had an opportunity to address whether the means of distributing medications at NCF could be or should be adjusted because of his morning prayer practices.  Under such circumstances, there is no manifest error of fact or law in the court's decision to grant defendants' motion for summary judgment on his RLUIPA claim relating to his morning prayers and the time and manner of morning medication distribution at the NHSP.

## **Conclusion**

For the foregoing reasons Mr. Czekalski's Rule 52(b)/Rule 59(e) motion (Doc. No. 142) is DENIED.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

March 29, 2022

cc:   Jason A. Czekalski, pro se
      Seth Michael Zoracki, Esq.